UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) 2:15-cr-00202-JDL |
| MOSES OKOT, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

Defendant Moses Okot is charged with being a felon in possession of a firearm, in violation of 18 U.S.C.A. § 922(g)(1) (2016). Okot has moved to suppress all evidence obtained as a result of his arrest, the search of his person, and the search of the vehicle he is alleged to have operated. ECF No. 34. For the reasons stated below, I deny the motion.

**I. FACT STATEMENT**

On November 16, 2015, at approximately 12:20 a.m., an officer with the Portland Police Department heard a number of gunshots while driving near the intersection of Fore Street and Pearl Street in Portland's Old Port district. The officer then observed a dark blue car driving away from the area at a high rate of speed. The officer followed the car in his patrol car, and noted that it failed to stop at a number of stop signs and was traveling at excessive speeds. The officer followed the car to Oxford Street, where it parked in the driveway at 136 Oxford Street. The driver, who was alone in the car, got out of the car and ran toward the back of the house, despite the police officer's command that he stop. The officer identified the driver as a black male, approximately 5'10" to 6' tall and weighing between 175 and 200 pounds. The

officer further noted that the man had short hair and was wearing a white t-shirt and light blue jeans.

The officer called for assistance, and more police officers soon arrived on the scene. The officers obtained consent to search 136 Oxford Street from a woman occupying the house, but did not locate the driver. The police then set a perimeter around the block. Two officers stationed on Cumberland Avenue, the street abutting the rear of 136 Oxford Street, climbed an exterior wooden porch or fire escape on a nearby building to obtain a better view of the area. On the third story of the wooden structure, the officers encountered a man fitting the driver's description. He was lying on his back, in an apparent effort to avoid detection. The officers handcuffed the suspect and performed a pat-down search for weapons, finding none. The officers then led him down the stairs to the ground level.

As soon as the officers had the suspect in custody on the third-story porch, they notified dispatch, which in turn relayed the information to the other officers on the scene. Other officers then secured the car in the driveway, and observed shell casings on the car's front windshield, on the ground next to the driver's side door, and inside the car on the floor near the driver's seat. Approximately 30 minutes later, officers observed a handgun inside the car that was partially under the front passenger seat.

Because the suspect was bleeding from a cut above his eye, the officers called for an ambulance. As the suspect was led to the ambulance, one of the officers present, Sergeant Farris, the senior officer on the scene, recognized the suspect as Moses Okot and addressed him by name. In response to a question from Farris, Okot

stated that he was currently on probation stemming from a conviction for felony murder. Farris called Okot's probation officer to request a probation hold. Okot was then taken to the hospital in the ambulance, accompanied by police officers. While Okot was at the hospital, an evidence technician performed a gunshot residue test on his hands, using a swab to search for traces of gunpowder. After his injury had been treated, Okot was taken to the police department, and then transferred to jail.

## II. DISCUSSION

Okot argues that he was illegally arrested without probable cause and that all evidence obtained as a result of the arrest must be suppressed. ECF No. 34 at 1. He also contends that the impoundment and search of the car he is alleged to have driven was unlawful.[1] *Id.* at 2. The government argues that probable cause to arrest existed at the time Okot was detained, or at the latest arose when the officers discovered the shell casings near the car, shortly after Okot was detained. The government also argues that Okot lacks standing to challenge the impoundment of the car, and that the seizure and search of the car was nonetheless lawful under the automobile exception to the Fourth Amendment's warrant requirement. ECF No. 39 at 5-6.

### A.  Probable Cause for Arrest

Okot argues that he was, in effect, placed under arrest at the time that he was handcuffed on the third-story porch, or at the latest when he was taken to the hospital. The police must have probable cause in order to arrest a defendant. *See*

---

[1] Okot also argued in his motion that the court should reevaluate the validity of any search warrants in this case, ECF No. 34 at 2, but withdrew that argument at the evidentiary hearing held on October 4, 2016.

*Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Pontoo*, 666 F.3d 20, 31 (1st Cir. 2011) (quoting *United States v. Young*, 105 F.3d 1, 6 (1st Cir. 1997)). Under the *Terry* doctrine, police may also conduct a brief investigatory stop based on a reasonable suspicion of criminal activity, "even in the absence of probable cause." *Id.* at 27.

The information available to the police at the time Okot was handcuffed on the third-story porch was as follows: a car was observed speeding away near the scene of a suspected shooting; a police officer followed the car and witnessed it drive through stop signs at an excessive speed; the driver of the car fled from the officer after parking near 136 Oxford Street, and failed to halt when ordered to do so by the officer; soon thereafter a man matching the description of the driver was found hiding on the third-story porch of a nearby building at approximately 1:00 a.m.; and the man was bleeding from an injury above his eye. I need not decide whether the police had probable cause to arrest Okot at that time; it is clear that they had enough information to support a reasonable suspicion of criminal activity sufficient to justify an investigatory stop. *See Pontoo*, 666 F.3d at 27. Under the circumstances, it was reasonable for the police to handcuff Okot and take him off the third-story porch. *See United States v. Weikert*, 504 F.3d 1, 6 (1st Cir. 2007) (noting that "reasonableness in all the circumstances" is "the touchstone of our analysis") (quotation omitted).

Once Okot was taken to the street level, Farris recognized him and Okot identified himself, and the officers learned that Okot was on probation for a violent felony. A call was placed to his probation officer, requesting a probation hold. Due to the injury to his head, Okot was taken to the hospital. At this point, based on the officers' knowledge of the totality of the circumstances, the police had probable cause to arrest Okot. *See United States v. Burhoe*, 409 F.3d 5, 8-9 (1st Cir. 2005).

In *Burhoe*, the First Circuit found that the police had probable cause to arrest a defendant who was observed near the place where the getaway car from a bank robbery had been abandoned. *Id.* at 10. The defendant, like the suspected robbers, was a white male, and the police noticed an abnormal bulge at his waist. *Id.* He looked out of place, acted strangely, attempted to remain hidden from the police, and attempted to flee from one of the officers. *Id.* The circumstances surrounding Okot's discovery, detention, and arrest are substantially similar. Okot fled by car from the scene of a shooting. He failed to halt when ordered to do so, and shortly thereafter he was found hiding on an exterior, third-story porch, bleeding from an injury to his head. Further, the police knew that Okot was on probation for a violent felony. On these facts, a reasonably prudent person would believe that Okot had committed a crime related to the shooting at the time Okot was detained and before he was transported to the hospital. *See Burhoe*, 409 F.3d at 10.

Even if Okot were correct that he was improperly arrested when he was transported by the police to the hospital, that finding would not require the suppression of the evidence obtained by the police at the hospital. At the time Okot

was taken to the hospital, the officers had, at the very least, a reasonable suspicion of Okot's involvement in the shooting, thus justifying his detention while they conducted their initial investigation. At the point the officers secured the car on Oxford Street and observed the shell casings on the windshield of the car Okot had driven, as well as on the ground near the driver's door and on the floor next to the driver's seat, the police had probable cause to arrest Okot, as the casings provided a direct link between the car and the shooting. Thus, even if one assumes that the police did not have probable cause to arrest Okot before the casings were discovered, the search associated with the gunshot residue test was lawful because it was preceded by the discovery of the casings. *Cf. United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) (noting that a search is valid when an arrest follows "quickly on the heels" of the search, as long as probable cause existed prior to the search).

Furthermore, the police were also justified in detaining Okot pursuant to the investigatory stop while they waited to hear back from his probation officer on the requested probation hold. *See United States v. Sanchez*, 817 F.3d 38, 42 (1st Cir. 2016) (noting that "officers may stop and briefly detain a person if they have reasonable suspicion that criminal activity is afoot"). Okot was subject to conditions of probation that subjected him to random searches for evidence of firearms. Gov. Exhibit 13 at 3. The Supreme Court has held that a police officer may conduct a warrantless search if he or she has reasonable suspicion that a probationer subject to search conditions is engaged in criminal activity. *See United States v. Knights*, 534 U.S. 112, 121 (2001). As noted above, the police reasonably suspected that Okot had

committed a crime when they detained him on the third-story porch. The gunshot residue test performed at the hospital is therefore valid independent of the arrest.

Accordingly, the gunshot residue test of Okot's hands was proper as a search incident to a valid arrest. The police had probable cause and properly arrested Okot before the test was performed at the hospital. After a valid arrest, police may conduct a search of a defendant's person and immediate surroundings without a warrant. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2175-76 (2016). The swab test of Okot's hands at the hospital was proper under this rule. *See United States v. Johnson*, 445 F.3d 793, 795-96 (5th Cir. 2006) (holding gunshot residue test valid as search incident to arrest).

Viewing the facts from the multiple perspectives I have considered, there is no basis to suppress the evidence obtained as a result of Okot's detention, including the gunshot residue test.

### B. Impoundment of Car

Okot also challenges the impoundment and search of the car parked outside 136 Oxford Street, claiming that it was improperly impounded without a warrant. ECF No. 34 at 2. In order to challenge a search of an automobile, a defendant must demonstrate a reasonable expectation of privacy in that automobile by showing "a property [or] a possessory interest in the automobile[.]" *United States v. Symonevich*, 688 F.3d 12, 19 (1st Cir. 2012). Okot is not the registered owner of the car, and he has produced no evidence to show that he had a possessory interest in the car when it was impounded. He therefore lacks standing to challenge the impoundment.

7

Even if Okot had standing to challenge the impoundment, however, the vehicle's impoundment was permissible under the automobile exception to the Fourth Amendment's warrant requirement. Under that exception, police may search a vehicle without a warrant, provided they have probable cause to believe the vehicle contains evidence of criminal activity. *See United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011). The discovery of the shell casings on the car's windshield and on the floor by the driver's seat, as well as the observation of the handgun inside the car, established probable cause to believe that the car would contain evidence of a crime. The warrantless seizure of the car was therefore permissible.

### III.  CONCLUSION

For the foregoing reasons, defendant Moses Okot's motion to suppress evidence (ECF No. 34) is **DENIED**.

**SO ORDERED.**

Dated this 9th day of November 2016

                                                       **/s/ JON D. LEVY**
                                                       **U.S. DISTRICT JUDGE**